**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> KAREEM MCNEIL, <br><br> Defendant. | Crim. No. 25-00447 (GC) <br><br> **MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Defendant Kareem McNeil's Motion for *De Novo* Review and release from pretrial detention. (ECF No. 57.) The Government opposed, (ECF No. 60), Defendant replied, (ECF No. 63), and the Government submitted a sur-reply, (ECF No. 66). The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1(b).[1] For the reasons set forth below, and other good cause shown, Defendant's Motion is **DENIED**.

## I. BACKGROUND

On November 13, 2025, the grand jury returned an eleven-count Superseding Indictment against Defendant Kareem McNeil and co-Defendant Paul X. McNeil. (ECF No. 27.) Kareem is charged with two counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) and 18 U.S.C. § 2; two counts of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); and two counts of using, carrying, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 18 U.S.C. § 2. (ECF No. 27.) The counts

---

[1] Local Civil Rule 78.1 applies to criminal cases in the District of New Jersey. *See* L. Cr. R. 1.1.

against Kareem relate to alleged armed robberies that occurred on July 27, 2022, and September 30, 2022, involving residential and commercial properties.  (*Id.*; ECF No. 60 at 1-2.)[2]  On November 14, 2025, Kareem pled not guilty to all counts and has remained detained since that date.[3]  (ECF Nos. 30, 34.)  The Court has designated this case complex for purposes of the Speedy Trial Act, 18 U.S.C. § 3161, in light of the issues in this case, including a death-penalty eligible charge against Paul.  (ECF No. 24.)

On December 11, 2025, Kareem filed a First Motion for Release from Custody, which was withdrawn on December 17, 2025.  (ECF Nos. 38, 40.)  On January 19, 2026, Kareem filed a Second Motion for Release from Custody.  (ECF No. 45.)  The Magistrate Judge held a bail review hearing on January 27, 2026, and denied Kareem's Motion for Release.  (ECF No. 47; *see also* ECF No. 57 at 19-31.)  A Second Detention Order issued on January 29, 2026.  (ECF No. 48.)  Kareem now seeks *de novo* review of the Magistrate Judge's decision denying his pretrial release.  (ECF No. 57.)

## II.    LEGAL STANDARD

Review of a detention order is conducted *de novo*.  *United States v. Delker*, 757 F.2d 1390, 1394-95 (3d Cir. 1985).  "*De novo* review does not require a *de novo* evidentiary hearing."[4]  *United States v. Turner*, Crim. No. 08-323, 2008 WL 4186212, at *1 (W.D. Pa. Sep. 5, 2008) (citations omitted).  The district court "may make its independent determination based solely upon the

---

[2]    Page numbers for record cites (i.e., "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[3]    A Second Superseding Indictment was returned on May 7, 2026.  (ECF Nos. 65.)  An arraignment was scheduled for June 17, 2026, but was adjourned following Kareem's request for new counsel at the arraignment.  (ECF No. 70.)

[4]    Kareem concedes that *de novo* review does not require an additional or independent evidentiary hearing by the district court.  (ECF No. 57 at 4.)

evidence introduced at the prior hearing." *Id.* (quoting *United States v. Farris*, Crim. No. 08-145, 2008 WL 1944131, at *7 (W.D. Pa. May 1, 2008)).  It may also consider any additional evidence submitted with any supplemental proceedings.  *Id.*

### III.   DISCUSSION

Kareem seeks review of the Magistrate Judge's Detention Order in two ways.  First, Kareem seeks *de novo* review of his detention under the statutory factors outlined in the Bail Reform Act, 18 U.S.C. § 3142(g).  (ECF No. 57.)  Second, Kareem challenges his detention as a due process violation.  (ECF No. 63.)  The Court considers each argument in turn.

### A.   Application of the § 3142(g) Factors

Under the Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, a judicial officer must order an arrested person's release or detention pending trial.  18 U.S.C. § 3141(a).  "Generally, a defendant must be released on bail on the least restrictive condition or combination of conditions that will reasonably assure the defendant's appearance and the safety of the community."  *United States v. Bergrin*, Crim No. 09-369, 2009 WL 1560039, at *4 (D.N.J. May 29, 2009) (citing 18 U.S.C. § 3142(c)(1)(B)).  However, "if the judicial officer finds that there is probable cause to believe that the person committed . . . an offense under [18 U.S.C. §] 924(c)," then it shall be presumed, subject to rebuttal, that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community."  18 U.S.C. § 3142(e)(3)(B).  An indictment "is sufficient to support a finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e)."[5]  *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986).

---

[5]   There do not appear to be any allegations that Kareem is a flight risk.  (*See* ECF No. 57 at 29; ECF No. 60.)

To rebut the presumption, "[t]he defendant must produce some credible evidence forming a basis for his contention that he . . . will not pose a threat to the community." *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986) (citing *United States v. Jessup*, 757 F.2d 378 (1st Cir. 1985)). Such evidence could include "testimony by co-workers, neighbors, family physician, friends, or other associates concerning the arrestee's character, health, or family situation," but such evidence still may be insufficient to overcome the presumption. *United States v. Perry*, 788 F.2d 100, 115 (3d Cir. 1986). If the presumption is rebutted, the burden shifts to the Government to show that the defendant is a danger to the community by clear and convincing evidence. *Id.* ("The clear and convincing standard does not . . . operate until the defendant has come forward with some evidence of lack of dangerousness."); *see also* 18 U.S.C. § 3142(f). "[T]he burden of persuasion ultimately rests upon the United States." *Perry*, 788 F.2d at 115.

Courts are to consider the following factors in determining whether to detain or release a defendant: "(1) the nature and seriousness of the offense charged; (2) the weight of evidence against the defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release." *Delker*, 757 F.2d at 1398-99 (citing 18 U.S.C. § 3142(g)). "Thus, for example, if the criminal history of the defendant is one of the factors to be relied upon, clear evidence such as record of arrest and conviction should be presented . . . [and] if the dangerous nature of the current offense is to be a basis of detention, then there should be evidence of the specific elements or circumstances of the offense, such as possession or use of a weapon or threats to a witness[.]" *Id.* at 1399 (quoting S. Rep. No. 98-225, at 22 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3205).

4

Kareem does not dispute that the § 3142(e) rebuttable presumption against his pretrial release applies. (*See* ECF No. 57 at 5 ("A rebuttable presumption against pretrial release arises when the defendant is charged, as in this matter, with an offense under 18 U.S.C. § 924(c).").) Kareem instead argues that he "can rebut the presumption with production of some evidence that . . ., if released, he will not pose a threat to the community." (*Id.* (citing *Carbone*, 793 F.2d at 560).) Kareem argues that he has worked hard to rehabilitate himself since his release from prison in 2021. (*Id.* at 8.) Specifically, Kareem has completed inpatient drug treatment, voluntarily continued weekly outpatient treatment, received vocational education and maintained employment, and obtained his forklift license, serve-safe certificate and Commercial Driver's License. (*Id.*) Prior to his arrest, he was also helping to support his girlfriend's daughter and was serving as an assistant coach for her softball and flag football teams. (*Id.*) The couple also has a young son together. (*Id.*) In support, Kareem provided the Court with six different letters from family and friends, and he submitted a letter on his own behalf. (*See id.*, Ex. A, at 12-18; ECF No. 68.)

In response, the Government contends that detention is appropriate as Kareem is a "violent, repeat felon whose firearm use poses a clear and present danger to the community." (ECF No. 60 at 3.) According to the Government, the alleged offenses are serious in that they involve the armed robbery of a victim in his apartment with his two children present, as well as an employee in an auto recycling shop. (*Id.* at 7-8.) If convicted, Kareem faces a possible sentence of 20 years imprisonment on each of the Hobbs Act robbery charges plus additional mandatory sentences of 14 years imprisonment on the two § 924(c) charges that must run consecutive to any other term of imprisonment. (*Id.* at 8-9.)

The Government further submits that Kareem "is no stranger to the criminal justice system," having previously killed someone. (*Id.* at 9.) Kareem was convicted of burglary in 2010, and while on probation, he was arrested and convicted of manslaughter and sentenced to 10 years. (*Id.* at 3.) Following his release from prison in July 2021, he was to be on parole supervision until July 2024 and is alleged to have committed the instant offenses in 2022. (*Id.*) Moreover, the Government contends that following his release in July 2021, Kareem has unlawfully possessed firearms as a felon. (*Id.*) The Government provided photographs of Kareem, including a photograph in which Kareem is masked and holding a firearm with a green sight laser and a photograph of Kareem with a firearm in his waistband, as well as photographs and text messages related to Kareem's attendance at a gun range. (*Id.* at 4-5.) The Government also provided Kareem's parole records as proof of his non-compliance and failure to report. (*Id.* at 6.) In sum, the Government argues that Kareem's "proclivity for violence and dedication to illegally possessing and using firearms is deeply concerning and demonstrates a very real danger to the community." (*Id.* at 9.)

The Court finds that even if Kareem has rebutted the statutory presumption of detention, the Government has established by clear and convincing evidence that no condition or combination of conditions could reasonably ensure the safety of the community if Kareem were to be released. While presumed innocent, Kareem is charged with several serious offenses, including two counts of Hobbs Act robbery, which are violent crimes that present a danger to the community. *See United States v. McBride*, Crim. No. 19-268, 2021 WL 51393, at *3 (W.D. Pa. Jan. 6, 2021) (finding crimes of violence present a danger to the community); *Delker*, 757 F.2d at 1400 ("The [Bail Reform] Act provides for consideration of the nature and seriousness of the offense charged with specific emphasis upon crimes of violence."). If convicted, Kareem faces substantial penalties.

6

*See United States v. Livingston*, Crim. No. 15-627, 2016 WL 1261464, at *3 (D.N.J. Mar. 31, 2016) (finding the nature and circumstances of the offense charged weighed in favor of detention when the offense carried a "statutory mandatory minimum term of imprisonment of ten years and a maximum term of life"). Thus, this factor favors pretrial detention.[6]

Kareem's history and characteristics also weigh in favor of detention. While the Court is mindful of Kareem's community ties and family obligations, Kareem has a significant criminal history and is alleged to have committed the instant offense while on supervision. Kareem has a prior manslaughter conviction from 2019. (*See* ECF No. 60 at 3; *see also id.* Ex. A.) Kareem was sentenced to ten years in prison, was released in July 2021 and while on parole he is alleged to have committed the instant offense. (*Id.* at 3.) *See also Livingston*, 2016 WL 1261464, at *4 (finding this factor weighed in favor of finding dangerousness because the person committed manslaughter while on probation for a robbery conviction); 18 U.S.C. § 3142(g)(3)(B) (requiring the Court to consider "whether, at the time of the current offense . . ., the person was on . . . parole"). The Bail Reform Act "specifically provides for consideration of prior arrests in the release decision . . . and the legislative history of the Act records Congress' belief that there is a 'significant correlation' between prior criminal history and pretrial rearrest." *Delker*, 757 F.2d at 1400 (citations omitted). The Court finds this factor weights in favor of detention.

Finally, the nature and seriousness of the danger to the community posed by Kareem's release points in favor of detention. Kareem was on parole at the time of the alleged offenses,

---

[6]     The Government also provides, by way of its brief, the circumstances involving the alleged crimes as well as some of the evidence against Kareem, including security camera footage from the apartment complex where the alleged July 27, 2022 armed robbery occurred and Paul's possession of the victim's stolen property. (ECF No. 60 at 7-8.) Kareem does not appear to address or challenge, at this stage, the weight of the evidence under the § 3142(g) factors. (*See generally* ECF No. 57.)

which raises concerns whether supervision while on pretrial release would sufficiently deter Kareem from engaging in criminal activity.  (ECF No. 60 at 3.)  Moreover, the Government submitted photographs to the Court of Kareem possessing various firearms, including as recently as September 2025, two months before his arrest in this case.[7]  (*Id.* at 5-6.)  While Kareem argues that possession of a handgun alone does not constitute clear and convincing evidence of dangerousness, (ECF No. 57 at 7 (citing cases)), the evidence before the Court is not limited to the mere possession of a weapon.  *See McBride*, 2021 WL 51393, at *6 ("There is no doubt that the armed robbery of citizens in convenience stores and the unauthorized possession (and discharging) of firearms poses a substantial harm to the community.").  The danger to the community is that if released, Kareem will illegally obtain firearms and commit further violent offenses on the community.  There are no conditions or combination of conditions that could reasonably ensure this Court that Kareem will no longer engage in criminal activity.  Defendant's community ties and family obligations "do not overshadow the factors that clearly and convincingly establish that he poses a danger to persons in the community." *Delker*, 757 F.2d at 1401.

### B.  Due Process

Kareem next argues that continued detention violates his due process rights under *United States v. Accetturo*, 783 F.2d 382 (3d Cir. 1986).  Specifically, Kareem contends that the length of his detention and the complexity of the case violate his due process rights and warrant release. (ECF No. 63 at 2.)

---

[7]    Kareem challenges the authenticity of the photographs found on his phone, questioning whether the photograph and firearm are real and whether they were "sent to or shared with anyone."  (ECF No. 57 at 7.)  The Court finds it appropriate to consider the photographs as the "rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing."  18 U.S.C. § 3142(f).

In addition to a challenge under the Bail Reform Act, a defendant may challenge pretrial detention as a due process violation. *United States v. Gibbs*, Crim. No. 23-35, 2024 WL 2112366, at *2 (D. Del. May 9, 2024) (citing *United States v. Accetturo*, 783 F.2d 382, 388 (3d Cir. 1986)). The due process analysis "should be made on the facts of individual cases," *Accetturo*, 783 F.2d at 388, and "should reflect the factors relevant in the initial detention decision as well as the following three *Accetturo* factors: (1) the length of the detention that has in fact occurred; (2) the complexity of the case; and (3) whether the strategy of one side or the other has added needlessly to that complexity," *United States v. Howard*, Crim. No. 17-291, 2020 WL 1891880, at *3 (M.D. Pa. Apr. 16, 2020) (citing *Accetturo*, 783 F.2d at 388). "[A] determination under the Bail Reform Act that detention is necessary is without prejudice to a defendant petitioning for release at a subsequent time on due process grounds." *Accetturo*, 783 F.2d at 388.

The Court finds that Kareem's detention does not violate due process. First, Kareem was detained on November 14, 2025, just over seven months ago. Courts have found detentions of much longer periods did not violate due process, even when the delay is attributable to a co-defendant. *See United States v. Telfair*, Crim. No. 08-757, 2008 WL 5188846, at *4 (D.N.J. Dec. 10, 2008) (twenty-two months); *Gibbs*, 2024 WL 2112366, at *6 (two years); *United States v. Akinola*, Crim. No. 11-310, 2016 WL 3566958, at *2 (D.N.J. June 28, 2016) (five years); *United States v. Harris*, Crim No. 09-305, 2011 WL 1660573, at *6 (W.D. Pa. May 3, 2011) (finding 19 month detention, with 11 months attributable to co-defendants, did not affect the defendant's due process rights).

Second, this Court has already determined that this case is complex. (*See* ECF Nos. 24, 42, 55.) Notwithstanding the death-penalty eligible charge against Paul, discovery in this case is voluminous. According to the Government, the Federal Bureau of Investigation collected

"documents, photographs, video recordings, witness statements, call detail records, historical cell site records, the results of search warrants executed on multiple cellular phones, and items of physical evidence." (ECF No. 21 at 6.) The Court finds that the length of Kareem's detention and complexity of this case do not outweigh the danger to the community if Kareem were released. *See United States v. Gatto*, 727 F. Supp. 903, 916 (D.N.J. 1989) (determining "the length of detention and complexity of the case do not outweigh the danger to the community if this defendant were released"); *United States v. Harris*, Crim. No. 19-00207, 2023 WL 2290269, at *4 (M.D. Pa. Feb. 28, 2023) (finding that "the more complex the case the less likely a prolonged period of pretrial detention is to offend due process").

Nor does the Court find that either party has "added needlessly" to the complexity of the case. *Accetturo*, 783 F.2d at 388; *United States v. Vastola*, 652 F. Supp. 1446, 1448 (D.N.J. 1987) (finding delay combined with some governmental responsibility including the government's delays in providing evidence and an unwillingness to provide an index of the evidence outweighed the risks of safety to the community). The Court is unpersuaded by Kareem's argument that the "Government's charging and strategy decisions" are the cause of the delays and complexity of this case, (ECF No. 63 at 2), particularly given the conspiracy counts involving both Defendants.

For these reasons, the Court does not find any due process violation that warrants release at this time.

## IV.    CONCLUSION

For the reasons set forth above, and other good cause shown, Defendant's Motion (ECF No. 57) is denied without prejudice.  An appropriate Order will follow.

Date: June __17__, 2026

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

11