**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KAREEM MCNEIL<br><br>Defendant. | Criminal Action No. 25-00447 (GC)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Defendant Kareem McNeil's Motion for Severance, (ECF No. 83), and Motion to Dismiss, (ECF No. 96). The Government opposed the Motions and Kareem[1] replied. (ECF Nos. 109, 111.) The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1(b).[2] For the reasons set forth below, and other good cause shown, Kareem's Motion for Severance, (ECF No. 83), and Motion to Dismiss, (ECF No. 96), are **DENIED**.

## I. BACKGROUND

On November 13, 2025, a grand jury returned an eleven-count Superseding Indictment against Kareem and co-Defendant Paul X. McNeil (Paul). (ECF No. 27.) The grand jury then returned a Second Superseding Indictment on May 7, 2026. (ECF No. 65.) Counts 1 through 6 of

---

[1] The Court refers to Defendant as "Kareem" to differentiate him from his co-defendant, Paul X. McNeil.

[2] Local Civil Rule 78.1 applies to criminal cases in this District. *See* L. Cr. R. 1.1.

the Second Superseding Indictment pertain to both Kareem and Paul. (*Id.* at 1-6.)[3] Those six counts include two counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) and 18 U.S.C. § 2; two counts of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); and two counts of brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 18 U.S.C. § 2. (*Id.*) The six counts relate to alleged armed robberies that occurred on July 27, 2022, and September 30, 2022. (ECF No. 65 at 1-2.)

Counts 7 through 11 of the Second Superseding Indictment pertain to Paul only. (ECF No. 65 at 7-11.) These five counts include: two counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) and 18 U.S.C. § 2; one count of discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and 18 U.S.C. § 2; one count of causing death through use of a firearm, in violation of 18 U.S.C. § 924(j)(1) and 18 U.S.C. § 2; and one count of brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). (*Id.*) Counts 7 through 11 relate to alleged armed robberies that occurred on August 11, 2023 and September 23, 2023. (*Id.*; ECF No. 109 at 4-6.)

The Government alleges that all four robberies involved the use of firearms, occurred within the greater Trenton, New Jersey area, and targeted business-owner victims engaged in cash-heavy local businesses. (ECF No. 109 at 3.) The Government alleges that during the July 27, 2022 robbery, Kareem and Paul entered the Trenton apartment of Victim-1, who owns a lawncare business. (*Id.* at 3-4.) The Government claims that Defendants were brandishing guns and took $2,700 in cash, largely consisting of the proceeds of Victim-1's business. (*Id.*) The Government further alleges that Kareem and Paul wore face masks and reflective construction vests during the

---

[3] Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

robbery. (*Id.* at 3, 14 n.6.) The Government alleges that, during the next robbery on September 30, 2022, Kareem and Paul, again wearing masks and reflective vests, entered an auto recycling shop in Ewing, New Jersey and took approximately $150,000 in cash from the business. (*Id.* at 4.) The Government alleges that Kareem and Paul were both armed during the robbery and that Paul pointed a gun at Victim-2, a store employee. (*Id.*)

The Government alleges that during the August 11, 2023 robbery, Paul entered the apartment of Victim-3, the owner of a Trenton cannabis shop. (*Id.* at 4-5.) The Government alleges that Paul stole Victim-3's business proceeds, and then shot Victim-3, who died from the gunshot wounds. (*Id.* at 5.) Finally, the Government contends that for the September 23, 2023 robbery, Paul entered a residence belonging to Victim-4, wherein he zip-tied the hands of Victim-4's minor children and an adult woman. (*Id.*) Paul then allegedly took cash proceeds from Victim-4's construction business. (*Id.*)

The Government alleges that the four robberies were part of a "common scheme" and highlights evidence that is relevant to both Counts 1 through 6 and 7 through 11, including a notebook recovered from Paul's residence, in which there is an alleged list that is titled "Goal $3,000,000.00" and that includes "Business Owner" in quotations and underlined. (ECF No. 109 at 12-14.) The Government alleges that the notebook also includes lists of guns and other items, like "zip ties," "face masks," and "construction worker" gear, used to commit the offenses, including the ones involving Kareem. (*Id.* at 14.) Additionally, the Government alleges that it will introduce Paul's cell site data to prove all four robberies at trial. (*Id.* at 13.)

On November 13, 2025, an arrest warrant was issued for Kareem. (ECF No. 27.) The following day, an initial appearance and arraignment were held where Kareem pled not guilty to all six counts. (ECF No. 30.) A detention order was also entered. (*Id.*) He has remained detained

since that date. (ECF Nos. 34; 113.)[4] The Court has designated this case complex for purposes of the Speedy Trial Act (STA), 18 U.S.C. § 3161, in light of the issues in this case, including a death-penalty eligible charge against Paul (Count 9). (ECF No. 24, 98.) In July 2026, following a *Faretta* hearing, the Court granted Kareem's request to proceed *pro se* and appointed standby counsel. (ECF No. 89.) On July 16, 2026 and August 18, 2026, respectively, Kareem filed the present Motion to Sever (ECF No. 83), and Motion to Dismiss (ECF No. 96), which are now ready for consideration by the Court.

## II. <u>LEGAL STANDARD</u>

### A. Severance

#### *1. Rule 8(b)*

When multiple defendants are joined in a single case, Federal Rule of Criminal Procedure (Rule) 8(b) governs the joinder of defendants and offenses. *United States v. Irizarry*, 341 F.3d 273, 287 (3d Cir. 2003). The Rule provides that two or more defendants may be charged together if they "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." "Thus, joinder of multiple defendants under Rule 8(b) is permissible only when there exists a 'transactional nexus' between the offenses charged." *United States v. Charlemagne*, Crim. No. 2024-0008, 2024 WL 4235966, at *4 (D.V.I. Sept. 18, 2024); *see also United States v. Jimenez*, 513 F.3d 62, 82-83 (3d Cir. 2008) ("It is not enough that defendants are involved in offenses of the same or similar character; there must exist a transactional nexus in that the defendants must have participated in 'the same act or transaction, or in the same series of acts or transactions' before joinder of defendants in a multiple-defendant

---

[4] On July 16, 2026, Kareem pled not guilty to the same six counts against him in the Second Superseding Indictment. (ECF No. 80.)

trial is proper" (citation omitted).). "[T]he federal system prefers 'joint trials of defendants who are indicted together []' because joint trials 'promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *United States v. Urban*, 404 F.3d 754, 775 (3d Cir. 2005) (quoting *Zafiro v. United States*, 506 U.S. 534, 537 (1993)).

"The movant for severance bears the burden of establishing improper joinder." *United States v. Wise*, Crim. No. 20-102, 2021 WL 5016013, at *7 (D.N.J. Oct. 28, 2021), *aff'd*, 134 F.4th 745 (3d Cir. 2025); *see also United States v. Avila*, 610 F. Supp. 2d 391, 394 (M.D. Pa. 2009). When assessing improper joinder, "[t]rial judges may look beyond the face of the indictment" when "representations made in pretrial documents other than the indictment clarify factual connections between the counts." *United States v. McGill*, 964 F.2d 222, 242 (3d Cir. 1992), *as amended* (May 19, 1992), *as amended* (June 24, 1992).

"A good-faith allegation of conspiracy will generally supply the requisite transactional nexus to join substantive offenses against multiple defendants. . . . Nonetheless, 'joinder may still be proper in the absence of a conspiracy count covering the time period for every substantive offense' where the separate offenses 'arose directly' from [ ] participation in a common illicit enterprise." *Charlemagne*, 2024 WL 4235966, at *4 (citation omitted); *see also United States v. Walker*, 657 F.3d 160, 169 (3d Cir. 2011) (citing *United States v. Riley,* 621 F.3d 312, 334 (3d Cir. 2010), *as amended* (Oct. 21, 2010)) (holding that Rule 8(b) joinder is proper in multi-defendant cases lacking a conspiracy count covering every substantive offense when all counts stem from the defendants' "participation in a common illicit enterprise"). For example, where multiple defendants were charged with a land fraud scheme, but only one was charged with tax fraud, joinder was proper because the tax fraud "arose directly from the land fraud proceeds." *Riley*, 621 F.3d at 334-35; *see also Walker*, 657 F.3d at 169-70 (holding that it was proper to join a defendant's

solo charges for possession of cocaine with other charges against both him and his co-defendant, because police found cocaine on the defendant after he was arrested for escaping pre-trial detention for the joint charges).

"A number of considerations are relevant when determining whether multiple defendants [a]re engaged in a common illicit enterprise." *United States v. Charlemagne*, Crim. No. 2024-0008, 2024 WL 4235966, at *4 (D.V.I. Sept. 18, 2024). The Third Circuit has considered whether offenses are of a similar nature, whether they took place in a common area, the timing between the offenses, whether they were perpetrated by the same defendants, and whether the Government suggests the defendants were co-conspirators in all counts. *United States v. Green*, 563 F. App'x 913, 916-17 (3d Cir. 2014) ("[T]he circumstances underlying the three incidents indicate they were part of a common scheme on the part of Green and his co-defendants. The indictment alleges the three armed robberies were perpetrated by the same defendants in a similarly violent nature and took place in the same area of the state."); *see also United States v. Askew*, 203 F. App'x 414, 418 (3d Cir. 2006) (holding that joinder of defendants in multiple robberies was proper, even though there was no overarching allegation of conspiracy or a common plan or goal, where defendants were "charged with virtually identical schemes . . . linked together by a common party," and noting that defendants "robbed banks with a common actor," employed "[t]he same method of operation . . . to rob the banks," and conducted the robberies "during a similar time frame"); *United States v. Coles*, Crim. No. 16-212, 2021 WL 308831, at *17 (M.D. Pa. Jan. 29, 2021), *aff'd*, No. 23-1530, 2025 WL 1024106 (3d Cir. Apr. 7, 2025) ("The nature, timing, and location of the separate offenses matter [for Rule 8(b) joinder]."). Rule 8(b) does not require all defendants to be charged in every count. *See* Fed. R. Crim. P. 8(b) (providing that defendants "may be charged in

one or more counts together or separately" and that "[a]ll defendants need not be charged in each count").

Courts determining whether defendants are engaged in a common illicit enterprise have also considered "the activity underlying" the counts and whether the counts "would . . . require introduction of much of the same evidence needed." *United States v. Rohlsen*, 174 F.R.D. 52, 55 (D.V.I. 1997), *aff'd sub nom. United States v. Riviere*, 185 F.3d 864 (3d Cir. 1999). Some have considered defendants' "mutual awareness" of offenses. *United States v. Charlemagne*, Crim. No. 2024-0008, 2024 WL 4235966, at *4 (D.V.I. Sept. 18, 2024). Courts have found joinder proper even when offenses occurred months apart. *United States v. Passineau*, No. 24-1288, 2025 WL 1121572, at *2 (3d Cir. Apr. 16, 2025) (holding that two robberies that occurred four months apart were "in the same series of acts or transactions" because they involved similar targets and methods); *United States v. Adens*, Crim. No. 12-616, 2015 WL 894205, at *3 (E.D. Pa. Feb. 27, 2015) (holding that a conspiracy that ended in July 2011 had "temporal proximity" to one that began in December 2011).

***2. Rule 14***

Properly joined charges may nevertheless be severed under Rule 14. *United States v. Wise*, Crim. No. 20-102, 2021 WL 5016013, at *8 (D.N.J. Oct. 28, 2021), *aff'd*, 134 F.4th 745 (3d Cir. 2025). Rule 14(a) provides that "[i]f the joinder of offenses . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). However, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro,* 506 U.S. at 539.

Defendants seeking to sever under Rule 14 "bear a 'heavy burden' and must demonstrate . . . that the denial of severance would lead to 'clear and substantial prejudice resulting in a manifestly unfair trial.'" *Urban*, 404 F.3d at 775 (citation omitted). "To prevail on a Rule 14 motion, a defendant must 'pinpoint clear and substantial prejudice resulting in an unfair trial.'" *Walker*, 657 F.3d at 170. "[A] defendant is not entitled to a severance merely because evidence against a co-defendant is more damaging than the evidence against the moving party." *United States v. Somers*, 496 F.2d 723, 730 (3d Cir. 1974). Further, "[m]ere allegations of prejudice are not enough; and it is not sufficient simply to establish that severance would improve the defendant's chance of acquittal." *United States v. Reicherter*, 647 F.2d 397, 400 (3d Cir. 1981) (noting also that "[t]he trial judge is best situated to weigh possible prejudice to the defendant against interests of judicial economy"). Courts deciding Rule 14 motions to sever should consider "whether the jury will be able to compartmentalize the evidence as it relates to separate defendants." *United States v. Davis*, 397 F.3d 173, 182 (3d Cir. 2005). "Juries . . . are presumed to follow their instructions," *Riley*, 621 F.3d at 335 (citation modified), and thus "[l]ess drastic measures [than severance], such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539.

## B. Right to a Speedy Trial

### 1. *Fifth Amendment*

"[T]he Due Process Clause of the Fifth Amendment 'protects defendants against oppressive pre-indictment delay.'" *United States v. Sebetich*, 776 F.2d 412, 430 (3d Cir. 1985). However, not "every delay-caused detriment to a defendant's case should abort a criminal prosecution," *United States v. Marion*, 404 U.S. 307, 324-25 (1971), and "there is no requirement imposed by the Fifth Amendment which requires that a prosecutor seek an indictment the moment he has probable cause to believe that an accused is guilty," *United States v. Ismaili*, 828 F.2d 153,

168 (3d Cir. 1987). Courts assessing the constitutionality of pre-indictment delay must determine whether it "violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions' and which define "the community's sense of fair play and decency." *United States v. Lovasco*, 431 U.S. 783, 790 (1977) (citation omitted).

"[I]n order to obtain a dismissal of charges on the grounds of pre-indictment delay pursuant to the Due Process Clause, a defendant must bear the burden of proving two essential facts: (1) that the government intentionally delayed bringing the indictment in order to gain some advantage over him, and that (2) this intentional delay caused the defendant actual prejudice." *Ismaili*, 828 F.2d at 167. The "dismissal of . . . indictments under the Due Process Clause" is an "extreme sanction." *Sebetich*, 776 F.2d at 430.

***2. Sixth Amendment***

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const., amend. VI. "The constitutional right to a speedy trial is both narrower and broader than the corresponding statutory right [under the STA]. It is narrower because it protects only against delays that result in prejudice; but it is broader because the Constitution protects against prejudicial delay regardless of whether a defendant can show a violation of the [STA]." *United States v. Gearhart*, 576 F.3d 459, 462 (7th Cir. 2009).

When determining whether a defendant's speedy trial rights under the Sixth Amendment have been violated, the Court weighs the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Courts must "engage in a difficult and sensitive balancing process and consider the factors together with such other circumstances as may be relevant." *United States v. Figueroa*, 189 F.4th 241, 255 (3d Cir. 2026) (citation modified). "The length of the delay . . . is to some extent a triggering mechanism." *Id.* "Unless the defendant demonstrates that 'there is some delay which is

presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.'" *Id.* The amount of delay that is tolerable depends on the specific circumstances of each case. *Barker*, 407 U.S. at 533-34 (finding that a five-year delay between arrest and trial was "extraordinary," and proceeding to analyze other *Barker* factors).

Regarding the reason for delay, "delay attributable to the defendant's own acts or to tactical decisions by defense counsel will not bolster defendant's speedy trial argument." *McNeely v. Blanas*, 336 F.3d 822, 827 (9th Cir. 2003); *see also United States v. Lattany*, 982 F.2d 866, 882-83 (3d Cir. 1992) (holding that there was no speedy trial violation where delay was attributable to defendant's litigation strategy). Courts consider the third *Barker* factor, the defendant's assertion of his right, because "a defendant has some responsibility to assert a speedy trial claim." *Barker*, 407 U.S. at 529. As for the fourth *Barker* factor, "the burden of showing prejudice lies with the individual claiming the violation," and "the possibility of prejudice is not sufficient." *Hakeem v. Beyer*, 990 F.2d 750, 761 (3d Cir. 1993) (citation modified). Further, the types of prejudice that weigh in favor of a violation include "oppressive pre-trial incarceration, anxiety and concern, and impairment of the defense." *Villalobos*, 560 F. App'x at 127. The Third Circuit has held that "pretrial detention, coupled with a fourteen and one-half month delay" does not "permit[] an automatic inference of enough prejudice to balance that factor in a petitioner's favor without proof of sub-standard conditions or other oppressive factors beyond those that necessarily attend imprisonment." *Hakeem*, 990 F.2d at 761.

### 3. ***Rule 48(b)***

Rule 48(b) provides that "[t]he court may dismiss an indictment . . . if unnecessary delay occurs in . . . presenting a charge to a grand jury" or "bringing a defendant to trial." Fed. R. Crim. P. 48(b). The Rule allows courts to "dismiss an indictment on constitutional grounds." *United States v. Goodson*, 204 F.3d 508, 513 (4th Cir. 2000); *see also United States v. Dreyer*, 533 F.2d

112, 113 n.1 (3d Cir. 1976) ("Rule 48(b) is a vehicle for enforcing a defendant's speedy trial right."). However, "it may be proper for a court to exercise its discretion to dismiss an indictment under Rule 48(b) even though the unreasonable delay in prosecuting does not rise to a constitutional violation." *United States v. Zabady*, 546 F. Supp. 35, 38 (M.D. Pa. 1982); *United States v. Ravelo-Santos*, Crim. No. 24-0490, 2025 WL 1260855, at *14 (D.N.J. Apr. 30, 2025). Rule 48(b) dismissal may also be proper even when there is no STA violation. *Ravelo-Santos*, 2025 WL 1260855, at *14. "In determining whether to exercise its discretionary power to dismiss under Rule 48(b), the court may consider the same factors relevant to a constitutional decision regarding denial of a speedy trial." *Zabady*, 546 F. Supp. at 38.

## III. DISCUSSION

### A. Joinder & Severance

Kareem argues that Counts 7 through 11 of the Second Superseding Indictment are improperly joined under Rule 8(b) because those counts pertain only to Paul and have "no conceivable nexus to the offenses asserted against Kareem." (ECF No. 83 at 1-2.) Kareem submits that he and Paul are not charged with an "all-encompassing conspiracy" and that the offenses do not arise out of a common plan or scheme. (ECF No. 111 at 5-6.) Kareem further argues that, even if joinder were proper, the joinder here would be "sufficiently prejudicial to justify severance under Rule 14." (ECF No. 83 at 2.) He contends that he may be "confounded in presenting defenses," that the jury may cumulate the evidence of separate crimes, and that allegations regarding the death of a victim will create spillover prejudice. (ECF No. 111 at 9.) He asserts that joinder here is contrary to the interests of judicial economy because it will require the Court "to give repeated and carefully crafted instructions to ensure that Kareem" is not prejudiced. (ECF

No. 83 at 2.) Kareem asserts that the proper remedy for this alleged misjoinder is the severance of Counts 7 through 11. (*Id.* at 2.)[5]

The Government argues that Kareem and Paul are properly joined because they are charged in the same series of acts and transactions with a common nexus: a succession of violent robberies all occurring within the same geographical area, in a defined time period, against business-owner victims involved in cash enterprises, committed at gunpoint. (ECF No. 109 at 8, 11.) The Government further contends that severance would result in "duplicative evidence, run contrary to the plan language of Rule 8(b), and frustrate "the advantage of allowing a single jury to see the entire case rather than only a segment of it, which likely leads to more reliable decisions." (*Id.* at 14.) Additionally, the Government argues that Kareem has not pinpointed "clear and substantial prejudice" as required for severance under Federal Rule of Evidence 14(a). (*Id.* at 15.) The Government submits that repeated instructions to the jury are not necessary, but even if they were, they would be well within the ambit of the Court. (*Id.* at 16-17.) Finally, the Government argues that the risk of spillover prejudice is low because the jury would be able to distinguish Paul's offenses from Kareem's and because of the second robberies are similarly disturbing to the first two. (*Id.*)

[5] Kareem also asserts, in a conclusory manner, that this Court's failure to grant his severance request has violated the STA, 18 U.S.C. § 3161, which was enacted "to give effect to the Sixth Amendment's speedy trial guarantee," *United States v. Bailey-Snyder*, 923 F.3d 289, 294 (3d Cir. 2019) (citation modified). The STA provides that a defendant has a right to be tried "within seventy days from the filing date (and making public) of the information or indictment." 18 U.S.C. § 3161(c)(1). Certain types of delays, including those resulting from continuances granted by courts for "complex" cases, are excluded from the 70-day clock. 18 U.S.C. § 3161(h)(7)(B)(ii). The Court has granted several continuances in this case due to its complexity. (ECF Nos. 42, 55, 98.) As the Government outlines in its brief, Kareem's speedy trial clock is far from expiring. (*See* ECF No. 109 at 25-27.) Accordingly, there has been no STA violation.

The Court finds that joinder is proper under Rule 8(b). All counts in the Second Superseding Indictment, including Counts 7 through 11, arise from Kareem and Paul's "participation in a common illicit enterprise," as seen by the common methods and goals of the four robberies, their similar location, their overlapping participant, and the common evidence underlying them. All of the robberies were at gunpoint and focused on similar targets: the owners of cash-heavy businesses at gunpoint.[6] (ECF No. 65.) These commonalities support the finding of a common scheme. *See Green*, 563 F. App'x at 917 (holding that the "similarly violent nature" of multiple robberies supported joinder); *Askew*, 203 Fed. App'x at 418 (holding that the "same method of operation" was employed in multiple robberies and that these "common methods" supported joinder). Indeed, the Government highlights how Paul's notebook includes a list titled "Goal $3,000,000.00" and included "Business Owner" in quotations and underlined, further suggesting that the offenses here were linked by a common scheme. (*See* ECF No. 109 at 12-13.) Also providing evidence of a common scheme, the location of the robberies was the same; all alleged robberies took place in the Trenton area. (ECF Nos. 65, 109); *Green*, 563 F. App'x at 916-17 (finding robberies to be part of a "common scheme" where they "took place in the same area of the state"). Additionally, Paul was a common participant across the four robberies. *See Askew*, 203 F. App'x at 418 (holding that joinder of defendants in multiple robberies was proper and reasoning that defendants had "robbed banks with a common actor").

Finally, Counts 1 through 6 and 7 through 11 appear to require the introduction of similar evidence. *See Rohlsen*, 174 F.R.D. at 55 (holding that counts were "part of the same series of acts" when they "would necessarily require introduction of much of the same evidence needed"). For

---

[6] Because the Government's representations in its opposition "clarify factual connections between the counts," the Court considers those representations, even though they are "beyond the face of the indictment." *McGill*, 964 F.2d at 242.

one, Paul's notebook includes lists of guns and other notes—like "zip ties," "face masks," and "construction worker"—describing items that the Government alleges were used to commit the robberies, including the two involving Kareem. (ECF No. 109 at 14.) The Government submits, for example, that the "construction worker" note is relevant because reflective construction vests were worn by Paul and Kareem during the first two robberies. (*Id.*) The Government also submits that it plans to introduce cell site data from Paul's cell phone for all four of the robberies. (*Id.* at 13.) The shared evidence between Counts 1 through 6 and 7 through 11—like the robberies' shared methods, similar location, and common participant—weighs in favor of finding that all counts pertain to a common illicit enterprise and thus that there is a "transactional nexus" supporting joinder under Rule 8(b). *See Rohlsen*, 174 F.R.D. at 55; *Charlemagne*, 2024 WL 4235966, at *4.

Although the approximately ten-month time gap between the second and third robberies makes the temporal proximity factor a closer call, it does not militate against joinder. The timing of offenses is just one factor courts consider in determining whether there was a common illicit enterprise. *Charlemagne*, 2024 WL 4235966, at *4 (noting that "[a] number of considerations" are relevant to the common illicit enterprise determination); *Green*, 563 F. App'x at 916-17 (considering the timing of offenses as one of several factors and noting only that the gap of time between each robbery did "not militate against joinder" (emphasis added).) Likewise, although Kareem contends that Rule 8(b) joinder is improper here because there is no "all-encompassing conspiracy," such a conspiracy charge may support, but is not required, for the court to find a common illicit enterprise. *See Askew*, 203 F. App'x 414, 418 (3d Cir. 2006) (holding that joinder of defendants in multiple robberies was proper, even though there was no overarching allegation of conspiracy). The fact that Kareem was not charged in the third and fourth robbery is also "of no moment; Rule 8(b) provides that '[a]ll defendants need not be charged in each count.'"

*Passineau*, 2025 WL 1121572, at *2 (holding that the joinder of charges for multiple robberies was proper under Rule 8(b) even though not every defendant was involved in every robbery). Considering the balance of the factors in this case—including the shared methods, targets, location, evidence, and participant in the four robberies—the Court holds that there is sufficient evidence of a "common illicit enterprise" to support joinder under Rule 8(b).

The Court further holds that severance under Rule 14 is not warranted. Kareem has not "pinpoint[ed] clear and substantial prejudice [from the denial of severance]" that would result in an unfair trial. *Walker*, 657 F.3d at 170. Although Kareem gestures to potential sources of prejudice—*e.g.*, that he will be "confounded in presenting defenses," and that the jury will cumulate, and be prejudiced by, the evidence of separate crimes, (ECF No. 111 at 9)—these allegations are generalized and "it is not sufficient simply to establish that severance would improve the defendant's chance of acquittal." *Reicherter*, 647 F.2d at 400; *United States v. Riley*, 621 F.3d 312, 335 (3d Cir. 2010), *as amended* (Oct. 21, 2010) (holding that a defendant who asserted "that the jury was unable to compartmentalize the evidence" "did not point to any specific prejudice" and thus denying the defendant's Rule 14 motion).

The Court agrees with the Government that because all offenses charged involve similarly violent robberies, any risk of spillover prejudice between counts—including from the August 11, 2023 robbery, where the victim died—does not rise to the level of "substantial" and can be significantly cured by appropriate limiting instructions. *See United States v. Giampa*, 904 F. Supp. 235, 266 (D.N.J. 1995) (holding that "the danger of a possibly prejudicial 'spillover effect' was avoided by" an instruction telling the jury to "consider separately the evidence against each defendant on each count"); *United States v. Eufrasio*, 935 F.2d 553, 569 (3d Cir. 1991) (holding that the trial court did not abuse its discretion in denying a Rule 14 severance motion filed by two

defendants who argued they would be prejudiced by a co-defendant's murder conspiracy charge and holding that "[t]he substantial public interest in the judicial economy of a joint trial outweighs the potential for prejudice . . . associated with evidence of [the co-defendant's] murder conspiracy.); *United States v. Adens*, Crim. No. 12-616, 2015 WL 894205, at *4 (E.D. Pa. Feb. 27, 2015) (finding Rule 14 severance unwarranted and holding that "there is no reason to believe that the jury will be unable to compartmentalize the evidence" where a defendant argued he would be prejudiced by a charge that his co-defendant "shot someone seven times"). Additionally, the fact that each robbery occurred on discrete dates will make it easier for a jury to "compartmentalize the evidence" related to the separate offenses and separate defendants here. *See Davis*, 397 F.3d at 182. Because Kareem has not met the "heavy burden" of demonstrating that there is a "serious risk" that "a joint trial would compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence," the Court holds that Rule 14 severance is not warranted. *Zafiro,* 506 U.S. at 539.

**B. Dismissal**

Kareem also argues that the Second Superseding Indictment in this case should be dismissed due to violations of his speedy trial rights under the Fifth and Sixth Amendments and Rule 48(b). (ECF No. 96 at 3; ECF No 111 at 14-15.) He highlights that his arrest occurred on November 14, 2025, over three years after the alleged offenses and over eight months before the filing of his Motion to Dismiss. (ECF No. 96 at 3.) He submits that, since the arrest, he has "repeatedly requested" that the case be brought to trial. (*Id.* at 2.) He argues that the continuances granted would not relate to the needs of this case if not for the joinder of Paul's case and that any delays attributed to him stem from his assertion of his speedy trial rights. (ECF No. 111 at 11-12.) He contends that he has been "severely prejudiced" by the passage of time since the Superseding Indictment was returned and submits that he does not recall events around the time of the alleged

offenses and that material witnesses have become unavailable. (ECF No. 96 at 5.) Kareem also submits that the delay of trial interferes with his liberty, disrupts his employment, causes him and his friends and family anxiety, drains his finances, curtails his associations, and subjects him to public obloquy. (*Id.* at 12-13; ECF No. 96 at 5.)

The Government argues that neither Kareem's constitutional speedy trial rights nor the STA have been violated. (ECF No. 109 at 17-18.) It contends that Kareem has not established a Fifth Amendment violation because he has not alleged with specificity facts that support intentional delay by the Government, nor specific evidence to demonstrate actual prejudice. (*Id.* at 19-20.) The Government submits that Kareem fails to establish a Sixth Amendment violation because the length of pre-trial delay here does not by itself support a Sixth Amendment violation or show that the delay is presumptively prejudicial. (ECF No. 109 at 22.) The Government also contends that Kareem "cannot have it both ways" and complain about a speedy trial while at the same time taking actions that cause delay, such as filing "repeated" motions and failing to agree to a scheduling order. (*Id.* at 23-24.) The Government argues that Kareem has not shown the prejudice required for a Sixth Amendment violation and that the possibility of prejudice alone is not sufficient. (*Id.* at 24.) Finally, the Government submits that Rule 48(b) dismissal is used sparingly and that Kareem has not demonstrated constitutional or statutory violations, nor any other "extreme" factor warranting such dismissal. (*Id.* at 28.)

The Court holds that dismissal of the Second Superseding Indictment under the Fifth Amendment is unwarranted. Kareem has not made any allegations about, much less met his burden of proving, the "two essential facts" required for this "extreme sanction." *See Ismaili*, 828 F.2d at 167; *Sebetich*, 776 F.2d at 430. First, Kareem has not demonstrated that the Government "intentionally delayed bringing the indictment in order to gain some advantage over him." *Ismaili*,

828 F.2d at 167. He makes no allegations as to what potential benefit, if any, the Government would have derived from delaying his indictment until 2025. Indeed, the Government plausibly submits that the three-year gap between the offenses and arrest was the result of the Government not discovering Kareem's participation in the robberies until Paul's arrest, and not an attempt to gain an advantage over Kareem. (ECF No. 109 at 19.) Additionally, Kareem has not shown with sufficient specificity that this delay "caused [him] actual prejudice." *See Ismaili*, 828 F.2d at 167. Although he argues that witnesses have become unavailable, that he faces "strategic disadvantage," faded memories, and the "inability to reconstruct events," he fails to elaborate, (ECF No. 111 at 13).[7] These "generalized allegations of prejudice are not sufficient to substantiate a claim that Due Process rights have been violated." *See United States v. Baxt*, 74 F. Supp. 2d 425, 433 (D.N.J. 1999).

Dismissal for the violation of Kareem's Sixth Amendment rights is also unwarranted. Approximately 11.5 months have passed since Kareem was arrested. This period of time, especially given the complex nature of this case stemming from the death-penalty-eligible charge against Paul (*see* ECF No. 24, 98), is not presumptively unreasonable. *See Barker*, 407 U.S. at 533 (noting that the specific circumstances of a case change the amount of delay that is tolerable). The 11.5-month delay here is far less than the delays other courts have found to be presumptively prejudicial. *See, e.g., United States v. Jones*, Crim. No. 20-2765, 2021 WL 6337787, at *2 (3d Cir. Sept. 10, 2021) ("[A] a three-year delay is presumptively prejudicial."); *Barker*, 407 U.S. at 534

---

[7] Kareem states that a witness "who was willing to testify as to the nature of charges in regard to [D]efendant['s] innocence" has "disappeared and cannot be located," (ECF No. 96 at 5), however he does not specify who this witness is. Without specifics, Kareem cannot meet his burden to prove prejudice. *See Baxt*, 74 F. Supp. 2d at 433.

(finding that a five-year delay was enough for the court to proceed to analyze the other *Barker* factors).

Even if the delay since Kareem's arrest was presumptively prejudicial, the balance of the other *Barker* factors weighs in favor of finding that Kareem's Sixth Amendment rights have not been violated. Kareem's actions, beyond just his assertion of his speedy trial rights, have contributed to the delay. At Kareem's scheduled arraignment on June 17, 2026, he requested a change of counsel, which required the Court to reschedule the arraignment. (*See* ECF Nos. 71, 74.) The Court then held a hearing in response to Kareem's request for new counsel, (*see* ECF No. 75), at which time Kareem made a request to represent himself *pro se*. (*See* ECF No. 76.) Because of Kareem's new request to represent himself, on July 16, 2026, the Court held a *Faretta* hearing. (*See* ECF No. 80.) Only after that hearing was the Court able to move forward with Kareem's arraignment. (*Id.*) The "delay attributable to" Kareem's "own acts" and "tactical decisions" does not support Kareem's speedy trial argument. *See McNeely*, 336 F.3d at 827. The Court also finds that Paul's eligibility for the death penalty has been a reasonable cause for other pre-trial delay in this case. *United States v. Cole*, 799 F. Supp. 3d 438, 458 (D.V.I. 2025) ("It is undeniable that the possibility of the imposition of a sentence of death significantly impacts and complicates every phase of the proceedings—from pretrial . . . to the penalty phase.") The reasons for delay here thus do not support a finding of a Sixth Amendment violation.

Regarding the third *Barker* factor, Kareem has borne the "responsibility to assert [his] speedy trial claim," *Barker*, 407 U.S. at 529. Finally, addressing prejudice, Kareem has alleged that the delay of trial here has caused him anxiety, interfered with his liberty and caused other grievances. (ECF No. 111 at 12-13.) These general allegations, unaccompanied by specific factual support, are not enough to demonstrate the existence of "oppressive factors beyond those that

necessarily attend imprisonment." *Hakeem*, 990 F.2d at 761. Indeed, "pretrial detention, coupled with . . . delay" does not "permit[] an automatic inference of enough prejudice." *Id.* Considering the *Barker* factors together, the Court holds that there has been no violation of Kareem's Sixth Amendment speedy trial rights and denies Kareem's request for dismissal on this ground.

The Court also declines to exercise its discretionary authority to dismiss the Second Superseding Indictment pursuant to Rule 48(b). For the same reasons already discussed, there has been no "unnecessary delay" either in "presenting" this case "to a grand jury" or in "bringing" Kareem "to trial." Fed. R. Crim. P. 48(b); *Zabady*, 546 F. Supp. at 38 (holding that courts consider the same factors when determining whether to dismiss a case under Rule 48(b) as when deciding whether there has been a constitutional speedy trial violation). Additionally, Kareem has not alleged that the Government engaged in misconduct or deliberate, oppressive action. *See Hunt v. United States*, 456 F.2d 582, 584 (3d Cir. 1972) ("An indictment should not be dismissed unless there has been deliberate or oppressive action by law enforcement officials."); *United States v. Murrietta*, Crim. No. 20-218-17, 2022 WL 2117766, at *4 (W.D. Pa. June 13, 2022) (declining to dismiss an indictment under Rule 48(b) because "there is nothing in the record evidencing deliberate or oppressive action by the Government").

## IV. CONCLUSION

For the foregoing reasons, and other good cause shown, Kareem's Motion for Severance, (ECF No. 83), and Motion to Dismiss, (ECF No. 96), are **DENIED**. An appropriate Order follows.

Dated: October 30, 2026

Georgette Castner

**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**